## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |  |
|---|---|---|
| NINA M. EIKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-11-3584 |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

Nina M. Eiker, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner"), denying Plaintiff's claim for a period of Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental

Social Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381-1383f. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's

Motion") (ECF No. 17) and Commissioner's Motion for Summary Judgment ("Commissioner's

Motion") (ECF No. 22). The Court has reviewed these motions and the applicable law. No

hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below,

the Court hereby DENIES Plaintiff's Motion and DENIES Commissioner's Motion and

---

[1] Subsequent to the commencement of this litigation, Michael J. Astrue was replaced as Commissioner of the Social Security Administration by Acting Commissioner Carolyn W. Colvin. United States Social Security Administration, Fact Sheet, http://www.ssa.gov/pressoffice/factsheets/colvin.htm (last visited April 29, 2013).

REMANDS this matter to the Social Security Administration for further proceedings consistent
with this opinion.

## **PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits on June 5, 2009. R. 154-55. The Commissioner
denied Plaintiff's claim on first review on December 2, 2009, R. 87-93, and on reconsideration
on June 17, 2010. R. 96-99. A hearing was held before an Administrative Law Judge ("ALJ")
on May 24, 2011. R 39-79. On July 25, 2011, the ALJ issued a written decision concluding that
Plaintiff was not disabled under the Social Security Act. R. 19-33.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20
C.F.R. §§ 404.1520, 416.920 (2011), and further explained below. At the first step, the ALJ
determined that Plaintiff has worked after the alleged onset date of January 1, 2003, but that it
was unclear whether the work performed was substantial gainful activity. R. 21. However, the
ALJ found it unnecessary to resolve this question due to the disposition of the case. *Id.* At the
second step, the ALJ determined that Plaintiff has the following severe impairments:
degenerative disc disease of the lumbosacral spine, left shoulder arthropathy, right knee
arthropathy, bipolar disorder, and polysubstance abuse. *Id.* The ALJ found that Plaintiff's right
elbow pain is not a medically determinable impairment. R. 21-22. At the third step, the ALJ
determined that Plaintiff "does not have an impairment or combination of impairments that
meets or medically equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22-23. At
the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity
("RFC") to perform light work, except that she is further limited to "occasionally reaching
overhead with her nondominant left arm; occasionally climbing ramps or stairs (never ladders,
ropes or scaffolds), balancing, stooping, kneeling, crouching and crawling; and carrying out

simple tasks in two hour increments (which can be accommodated by regularly scheduled breaks)." R. 23-31. The ALJ found that Plaintiff is unable to perform any of her past relevant work as a bartender, waitress, construction laborer, groundskeeper, and nursing assistant. R. 31. At the fifth step, the ALJ determined that considering Plaintiff's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including routing clerk, checker, and collator. R. 32-33. As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of January 1, 2003, through the date of the decision. R. 33.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. R. 14. The Appeals Council denied Plaintiff's request on October 17, 2011, making the ALJ's decision final and appealable. R. 1-3.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345.  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456.  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2011).  The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's condition for the following six reasons:

1) The ALJ failed to properly interpret Plaintiff's credibility and activities of daily of living in determining her residual functional capacity, and showed bias against her;

2) The ALJ did not properly weigh the opinions of treating and consulting physicians;

3) The ALJ did not apply the appropriate regulations for evaluating Plaintiff's mental impairments;

4) The ALJ improperly assessed Plaintiff's subjective complaints of pain;

5) The ALJ erroneously found that Plaintiff was able to perform light work and therefore should have granted her benefits as of

six months prior to her fiftieth birthday, pursuant to the
Medical-Vocational Guidelines, 20 C.F.R. Subpart P,
Appendix 2 ("the Grids"); and

6) The ALJ did not include all of Plaintiff's limitations in
formulating the hypothetical question posed to the vocational
expert.

Plaintiff notes that although she initially alleged a disability onset date of January 1, 2003, the

arguments in her appeal concentrate on Plaintiff's claim beginning in early 2010.  Pl.'s Br. 4.

While it appears that Plaintiff waived any argument that she was disabled from January 1, 2003,

to January 1, 2010, the Court will address the ALJ's decision as a whole.

**I.**      **The ALJ Properly Weighed Plaintiff's Activities Of Daily Living In Assessing Her**
         **Credibility And Her Physical Residual Functional Capacity.**

When assessing the effect of claimants' activities of daily living on their physical RFC,

ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently

indicative of a claimant's ability to do work existing in the national economy.  "[A] claimant

need not be constantly bedridden or completely incapacitated to be found disabled."  *Morgan v.*

*Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano,* 624 F.2d 10, 11–

12 (4th Cir.1980)).  Individual or sporadic instances of activity do not necessarily demonstrate a

person's ability to work on a sustained basis for eight hours per day.  *See Bauer v. Astrue*, 532

F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or

psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better

days and worse days.").  Further, the ability to engage in some light activity does not necessarily

translate into the ability to do substantial gainful activity.  *See Morgan*, 142 F. App'x at 729

(finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally

practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir.

1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary

work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper the ALJ's adverse credibility judgment against claimant who would load dishwasher and fold clothes, and went to Aruba on his honeymoon), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on Plaintiff's ability to do housework "at her own pace with periods where no work was performed").

Nonetheless, the Court must be careful not to intrude on the ALJ's role as the fact finder who weighs all of the evidence and evaluates the claimant's allegations. An ALJ's credibility findings are entitled to substantial deference, and the Court is not to re-weigh conflicting evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The Court should not hamper the ALJ's consideration of the individual pieces of evidence, even if taken in isolation they would be insufficient to support the ALJ's conclusion. *See, e.g.*, *Valley v. Astrue*, No. 3:11-CV-260-HEH, 2012 WL 3257861, at *15 (E.D. Va. June 22, 2012) (finding that a plaintiff's ability to perform simple household chores, drive, and take care of her grandchildren, when combined with positive response to medication and ability to ambulate, were sufficient to discount her claim of disability), *report and recommendation adopted*, No. 3:11CV260-HEH, 2012 WL 3257876 (E.D. Va. Aug. 8, 2012).

Plaintiff further alleges that the ALJ was biased against her in assessing her credibility. Any such allegation must begin from the presumption that the ALJ is unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982) (discussing ALJ's who decide Medicare Part B claims). This presumption may be rebutted by showing that an opinion derives from an extrajudicial

source or that there was such a high degree of favoritism or antagonism as to render a fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Davis v. Astrue*, No. 5:10CV72, 2011 WL 3236196, at *3 (N.D.W. Va. July 28, 2011) (applying *Liteky* and *Schweiker* to Social Security context). Expressions of impatience, dissatisfaction, annoyance, and even anger are not sufficient to establish bias or impartiality. *Liteky*, 540 U.S. at 566. Further, this Court has held that even when the ALJ improperly considers evidence that is irrelevant or speculative, remand is not warranted so long as the improper considerations do not infect the remainder of the credibility analysis which is supported by substantial evidence. *Thompson v. Astrue*, No. 11-942, 2012 WL 1676609, at *3 n. 3 (D. Md. May 11, 2012). However, such unwarranted considerations may make it impossible for the Court to ascertain whether the ALJ's conclusion was based on substantial evidence, thereby warranting remand. *See Haines v. Astrue*, No. 10-CV-822, 2012 WL 94612, at *2 (D. Md. Jan. 10, 2012).

The ALJ here was not so biased as to render a fair judgment impossible, nor did she consider improper evidence in her opinion. In alleging bias, Plaintiff points to an exchange in the hearing transcript in which the ALJ badgered Plaintiff over why she doesn't move in with her mother or bring a roommate into her house in order to save money. Pl.'s Br. 7-8, R. 57-59. The Court finds these exchanges inappropriate and irrelevant, but as such considerations were not mentioned in the ALJ's opinion they do not infect her ultimate conclusions.

Plaintiff's testimony was that she could only walk for two blocks before needing to stop, stand for about an hour, sit for twenty-five minutes, lift about a gallon of milk, and that she cannot sleep more than two hours per night and is constantly fatigued and unable to concentrate. R. 25. The ALJ refers repeatedly to the following activities of daily living in asserting that Plaintiff's claimed level of disability is not credible: her ability to care for animals on her

farmette, engage in heavy labor, ride a lawn mower occasionally, drive on a daily basis to visit her mother, help her mother with yard work, and interact with her son. R. 25-28, 31. The record reveals that some of these activities were infrequent or may have required very little exertion. For example, there is nothing in the ALJ's opinion or the record to indicate that Plaintiff's care for two small ponies and a calf on her farmette required any amount of concentration, physical exertion, or standing and walking. R. 22, 25-28. The ALJ relied on Plaintiff's statement that she helped her mother pull some weeds, even though nothing in the record suggested that this was more than a one-time occurrence. R. 26, 64. Nonetheless, the ALJ also relied on several references in the medical records suggesting that Plaintiff continued to perform heavy labor or lift heavy objects at home and on the farm, even if she occasionally injured herself while doing so. R. 243, 267, 292, 318. Plaintiff's treating physician, Dr. Bonita Krempel-Portier, wrote in May of 2008 that she "lives on farmette and does the landscaping for the farmette, frequently placing herself at risk for and reinjuring self lifting heavy object [sic] such as small tractors, rocks, etc." Further, the ALJ relied on evidence that Plaintiff sought to conceal the extent of her continued labor, at one point telling her doctor "not to write that down" after informing her she had been doing heavy lifting when she injured herself. R. 29, 292. Plaintiff also admitted to regularly cutting her lawn using the riding mower, although it causes her pain. R. 63. While the Court does not agree with every inference drawn by the ALJ, the analysis of Plaintiff's activities of daily living is supported by substantial evidence and the Court cannot endeavor to re-weigh the evidence.

## II.     The ALJ Did Not Properly Apply The Regulations For Weighing Opinion Evidence.

Plaintiff alleges that "the ALJ did not give sufficient weight to the opinions and findings of treating and consulting physicians" and "failed to give sufficient weight to some medical evidence and reports." Pl.'s Br. 10. The regulations require the Commissioner to give more

weight to the opinions of treating sources, since they are "most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d), 416.927(d) (2011). First, the ALJ is required to give the treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in your case record." *Id*. If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the following factors must be applied to determine its proper weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; and (5) whether it is the opinion of a specialist regarding his or her area of specialty. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (2011). The Social Security Rulings[2] emphasize that even when a treating source is not entitled to controlling weight it is still entitled to deference and must be weighed using all of the factors. SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996). A formulaic recitation of the factors is not required so long as it is apparent that the ALJ was aware of and considered each one. *Hooks v. Astrue*, No. 11-423, 2012 WL 2873944, at *8 (D. Md. July 12, 2012); *see also Burch v. Apfel*, 9 F. App'x 255, 259-60 (4th Cir. 2001). In addition, certain determinations are always reserved to the Commissioner because they are administrative findings and are dispositive of the case. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2011). These include opinions that a claimant is disabled, whether an impairment meets or equals a listing, a claimant's RFC, and the application of vocational factors. *Id*.

_____

[2] Although not required by statute, the Commissioner publishes the Social Security Rulings which are binding on all components of the Social Security Administration. They represent precedent, final opinions, and statements of policy which the Commissioner has adopted. 20 C.F.R. § 402.35(b)(1) (2012).

Medical opinions of state agency consultants are to be evaluated using the same factors as discussed above for treating physicians. 20 C.F.R. §§ 404.1527(f), 416.927(f) (2011). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of state agency consultants in the same fashion as for other medical sources. *Id.*

The ALJ gave "very little weight" to the RFC assessments completed by Dr. Krempel-Portier, Plaintiff's primary treating physician. R. 31. In a "Medical Report Form 402B" completed by Dr. Krempel-Portier on May 28, 2008, she found Plaintiff to be highly limited in her functional abilities, opining that she is only able to sit, stand, or walk for one hour in an eight hour work day and would be unable to work for a two year period. R. 282-84. Even if these findings are assessments of RFC which are reserved to the Commissioner, the ALJ must evaluate the medical opinions underlying the physician's conclusions and assign weight according to the factors listed above. *Battle v. Astrue*, No. 09-3281, 2011 WL 4048525, at *1 (D. Md. Sept. 8, 2011). The ALJ did not explicitly mention the relevant regulations, discuss any of the required factors, or explain why Dr. Krempel-Portier's opinion was not given controlling weight. The only discussion that even indirectly addresses one of the factors is the ALJ's conclusory statement that Dr. Krempel-Portier's opinion was "inconsistent" with Plaintiff's activities of daily living and "minimal" medical treatment. R. 31. While the ALJ mentioned Dr. Krempel-Portier's treatment notes on a few other occasions in the opinion, there is no explicit acknowledgment of the length, nature, or extent of her treating relationship with Dr. Krempel-Portier. R. 27, 29. The ALJ's opinion does not discuss whether or not Dr. Krempel-Portier's opinion is supported by laboratory testing or other relevant medical evidence. The ALJ may not so completely reject the opinion of Plaintiff's primary treating physician without a more thorough application of the required factors. *See Russell v. Comm'r of Soc. Sec.*, 440 F. App'x

163, 164 (4th Cir. 2011) ("If the ALJ does not give the treating physician's opinion controlling weight, she must give good reasons in her notice of determination or decision for the weight she gives the treating source's opinion."); SSR 96-2P, 1996 WL 374188, at *5 ("[T]he decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The ALJ addressed the opinions of the State agency medical consultants in a similarly conclusory fashion. The ALJ simply states "I attribute significant weight to the opinion of the State agency medical consultant at the reconsideration level that the claimant is able to perform a range of light work activity, as such an opinion is consistent with the record evidence as a whole as described above." R. 31. The ALJ then states "I give less weight to the opinion of the State agency medical consultant at the initial level," who found that the claimant was limited to standing and walking only two hours per workday. This analysis is completely lacking in application of the required factors, such as a discussion of what evidence the consultant relied on and in which specific ways they are consistent or inconsistent with the record evidence. This omission is especially important because Plaintiff's sitting, standing, walking, and lifting capacities are crucial to the determination of whether she retains the RFC to perform light work, as discussed below. Remand is necessary so that the ALJ can properly apply the 20 C.F.R. § 404.1527(c) factors in assessing all of the opinion evidence.

## III.   <u>The ALJ Did Not Properly Apply The Regulations For Evaluation Of Plaintiff's Mental Impairments.</u>

Plaintiff alleges that the ALJ failed to follow the steps required by the regulations for the evaluation of mental impairments when discussing her bipolar disorder, which the ALJ found to

be a severe impairment. While the ALJ may have satisfactorily complied with the special technique for the evaluation of mental disorders required by the regulations, errors in the ALJ's discussion of Plaintiff's alcohol use and non-compliance with treatment require remand.

**A. The ALJ Complied With The Special Technique For The Evaluation of Mental Impairments, But On Remand Must Thoroughly Explain How Plaintiff's Mental Limitations Are Consistent With The Residual Functional Capacity Assessment.**

When evaluating a mental impairment, the ALJ is required to follow the special technique set out in 20 C.F.R. §§ 404.1520a, 416.920a (2011), the steps of which track the overall sequential evaluation process. The first step is for the ALJ to evaluate the pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The next step is to determine the degree of functional limitations by rating the claimant in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). After rating the degree of functional limitation the ALJ determines the severity of impairment and whether it meets or equals a listing, by comparing the medical evidence to the degree of functional limitation of the appropriate mental disorder. 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920a(d)(1)-(2). Finally, if the claimant has a severe mental disorder that does not meet or equal a listing, the ALJ must determine the RFC of the claimant. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The ALJ must document application of the technique by incorporating the pertinent findings and conclusions into the opinion. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The opinion must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

The regulations provide special guidance for evaluating the limitations caused by mental impairments because of the high degree of difficulty claimants with such conditions may experience adapting to the workplace. *See* SSR 85-15, 1985 WL 56857, at *5-6 (Jan. 1, 1985). Individuals with mental illness may be able to function well within a restrictive or inflexible routine, but nonetheless be unable to meet the demands of even low-difficulty jobs. *Id.* For that reason, the Social Security Administration requires a thorough and individualized assessment of how limitations created by claimants' mental impairments affect their RFC and ability to work. *Id.* A case that vividly illustrates this principle is *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008). There, the ALJ discounted the opinions of the plaintiff's treating psychiatrist and psychologist that her bipolar disorder prevented her from working, citing supposedly contradictory evidence that she was able to dress appropriately, shop for food, prepare meals, perform household chores, and maintain her personal hygiene. *Id.* at 607-08. The Seventh Circuit rejected the ALJ's conclusion as demonstrating "a lack of acquaintance with bipolar disorder," because the plaintiff's ability to manage a simple routine is not sufficient to contradict the opinions of her treating mental health professionals and her repeated hospitalizations for her symptoms. *Id.* at 608. The court stated that a person who has bipolar disorder and responds erratically to treatment might have goods days in which she is well enough to work, but would likely be unable to hold down a full-time job because of the bad days. *Id.*

Here, the ALJ followed the steps required by the special technique for the evaluation of mental impairments. After finding that Plaintiff's bipolar disorder is a medically determinable and severe impairment, the ALJ evaluated her in the four functional areas required by the regulations and determined that she does not meet or equal a listing. R. 22-23. The ALJ found that Plaintiff has mild restrictions in areas of daily living; mild difficulties in social functioning;

moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. *Id*. In reaching this conclusion the ALJ relied only on evidence from an undated Function Report form submitted by Plaintiff, without referring to any of the medical documentation and findings regarding her bipolar disorder. *Id*. However, in the RFC assessment the ALJ reviewed Plaintiff's mental health treatment records from the Frederick County Health Department, Frederick Memorial Hospital, and Dr. Krempel-Portier, as well as state agency consultative evaluations performed by Dr. Laura Estupinan-Kane and Dr. Gary Klein. R. 29-31. The ALJ's analysis was not improper merely because it split up the required steps amongst different sections of the opinion. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (finding appropriate compliance with the special technique where the ALJ assessed the areas of functional limitation at step three and the mental health records at step four).

Despite the ALJ's procedural fealty to the requirements of 20 C.F.R. § 404.1520a, the Court finds the analysis somewhat lacking in explanation of how the limitations caused by Plaintiff's bipolar disorder, if any, would restrict her in the workplace. After limiting Plaintiff to performing simple tasks in two-hour increments, the ALJ does not explain how the medical evidence supports this degree of limitation, aside from mentioning Plaintiff's self-reported ability to read and do crossword puzzles. R. 23. The ALJ lists Plaintiff's activities of daily living such as caring for a farmette, driving, visiting her mother, and interacting with her son and suggests that they establish the absence of limitations caused by her bipolar disorder. R. 23. However, the ALJ ignores uncontradicted evidence that she relies on others to prepare meals, wash dishes, do laundry, and do household chores. R. 31, 57-58, 60, 195, 382, 574. Like in *Bauer*, the ALJ does not fully account for how these activities are inconsistent with the alleged limitations caused by bipolar disorder and does not explain how they lead to the conclusion that she can

perform work in two hour increments.  Nonetheless, the Court need not determine whether the ALJ's analysis was so deficient to warrant remand because of the other bases for remand discussed on this opinion.  On remand the Court cautions the ALJ to take note of SSR 85-15 and fully assess whether Plaintiff in fact retains the RFC to work in spite of her bipolar disorder.  R. 23.

### B. The ALJ Inappropriately Considered Plaintiff's Alcohol Use Without Applying The Correct Regulations.

If alcohol or drug abuse is a contributing material factor to a claimant's disability, that claimant's application must be denied.  42 U.S.C. § 423(d)(2)(c) (2012); 20 C.F.R. §§ 404.1535, 416.935 (2011).  The conditional language of the regulation requires a determination that the person is disabled before the ALJ considers whether the claimant's alcohol use contributes to the disabling condition.  Courts applying this regulation have held that the ALJ must first determine whether the claimant is disabled without segregating out any effects that may be due to substance abuse disorders.[3]  *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001); *McGhee v. Barnhart*, 366 F. Supp. 2d 379, 389 (W.D. Va. 2005); *see also Cruey v. Astrue*, No. 09-502, 2010 WL 5418911, at *3 (D. Md. Dec. 23, 2010); *Mortazavi v. Astrue*, No. 09-637, 2010 WL 3385460, at *4-5 (D. Md. Aug. 26, 2010).  If the "gross total of a claimant's limitations, including the effects of substance use disorders" shows a disability, the ALJ must then seek to separate out the effects of alcohol or substance use and determine whether it is a contributing material factor.  *Brueggemann*, 348 F.3d at 689.

---

[3] While there is no Fourth Circuit case directly addressing this point, a footnote in *Wagner v. Apfel*, 1999 WL 1037573 (4th Cir. Nov. 16, 1999), suggests that an ALJ's improper consideration of polysubstance abuse before an initial finding of disability was an extra benefit to the claimant and therefore not erroneous. *Id.* at *2 n.2.  The court apparently believed that the ALJ considered the limitations caused by his alcoholism in addition to other limitations and nonetheless found that the claimant was not disabled.  The Court here will not conduct such harmless error analysis because of the extensive discussion of Plaintiff's alcohol use and the lack of any indication that the ALJ was aware of the proper regulations.

Here, the ALJ extensively discussed Plaintiff's alcohol use in assessing her mental limitations and RFC. The ALJ cites evidence of Plaintiff's alcohol use in the medical records from Frederick County Mental Health Services, Frederick County Health Department, and Emmitsburg Osteopathic Primary Care Center. R. 29-30. The ALJ discusses Plaintiff's alcohol use and when evaluating the opinion evidence provided by Dr. Klein and Dr. Krempel-Portier. R. 29-31. In fact, a significant portion of the ALJ's discussion of Plaintiff's mental RFC is dedicated to her alcohol use. Nonetheless, the ALJ never mentioned the applicable regulations and did not explain what conclusions she is drawing from Plaintiff's alcohol use. It is not clear whether the ALJ concluded that the limitations Plaintiff alleges are in fact due to her alcohol abuse and not her bipolar disorder, or that Plaintiff was not disabled despite her alcohol abuse. The ALJ's failure to apply the proper procedure and explain alcohol-related conclusions in the opinion warrants remand. *See Brueggemann*, 348 F.3d at 694 ("[T]he ALJ's failure to cite 20 C.F.R. § 404.1535 anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there. The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard.").

### C. The ALJ Failed To Apply The Proper Regulations For Assessing Plaintiff's Noncompliance With Mental Health Treatment.

The ALJ also discussed extensively Plaintiff's failure to comply with her mental health treatment without mentioning or applying the relevant regulations. In order to get benefits, the regulations require claimants to follow treatment prescribed by their physicians that might restore their ability to work. 20 C.F.R. §§ 404.1530(a), 416.930(a) (2011). However, they also provide acceptable reasons for failure to follow prescribed treatment and require that a claimant's physical, mental, educational, and linguistic limitations be considered. 20 C.F.R. §§ 404.1530(c), 416.930(c). In order for benefits to be denied based on noncompliance with

treatment, the ALJ "must conduct a particularized inquiry and develop a record establishing by substantial evidence that the claimant's impairment is reasonably remediable by the claimant given the claimant's particular situation and that the claimant lacks good cause for failing to follow a prescribed treatment program." *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274-75 (D. Md. 2003) (citing *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir.1985)). The burden is on the Commissioner to establish treatment noncompliance without justification. *Id.* at 274. Further, it is improper to penalize a claimant for not seeking treatment due to an inability to afford it.[4] *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984).

The ALJ's opinion is replete with references to Plaintiff's failure to comply with prescribed physical and mental health treatment. The ALJ stated that she "received minimal treatment despite her access to medical care," "never followed through [with treatment] against medical advice," "received minimal mental health treatment," showed a history of "failure to follow through with [mental health] treatment," and that the opinion of her treating physician was "inconsistent with [her] minimal medical treatment, despite access to care." R. 26-31. However, the ALJ also ignored multiple references in the record to Plaintiff's inability to afford her treatment or lack of insurance coverage. R. 65, 286, 291, 475, 642. Remand is required

---

[4] According to the Social Security Rulings, a justifiable reason for failure to follow prescribed treatment is:

*The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable.* Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented. Where treatment is not available, the case will be referred to VR.

SSR 82-59, 1982 WL 31384, at *4 (Jan. 1, 1982). While Plaintiff did not produce evidence to meet this standard, the burden is on the Commissioner in showing treatment non-compliance and the ALJ's failure to acknowledge that burden and provide evidence to meet it warrants remand.

because the ALJ never mentioned the appropriate standard and did not conduct the "particularized inquiry" required by *Fleming*. It is not sufficient to state in conclusory fashion that Plaintiff had "access" to medical care. On remand the Commissioner must establish that Plaintiff's condition is remediable and that she lacked good cause for not following through with treatment.

## IV.  The ALJ Properly Assessed Plaintiff's Allegations Of Pain.

Plaintiff argues that the ALJ did not properly assess limitations caused by her complaints of pain. When evaluating a claimant's reports of pain, the ALJ must follow a two-step process. 20 C.F.R. §§ 404.1529, 416.929 (2011); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). At step one, the adjudicator considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b). At step two, the adjudicator must evaluate the intensity and persistence of the pain, and determine the extent to which it limits the capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c). The adjudicator will review the entire record, including medical and laboratory findings, the claimant's own statements, and any information provided by treating and non-treating medical sources. *Id*.; SSR 96-7p, 1996 WL 374186, at *2. Once the adjudicator finds the first step has been satisfied, the claimant may rely entirely on subjective evidence of pain, and such evidence should not be rejected for the sole reason that it is not substantiated by objective medical evidence. *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p, 1996 WL 374186, at *2. This rule recognizes that pain is a highly subjective phenomenon and is not readily susceptible to objective proof. *Hines*, 453 F.3d at 564-65.

While assessing Plaintiff's RFC, the ALJ correctly stated the standard for evaluating symptoms of pain. R. 24, 26-27. At the first step, the ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause the alleged symptoms.  R. 26.

At the second step, the ALJ found that the claimant's statements concerning the intensity,

persistence, and limiting effects of the symptoms were not entirely credible.  *Id*.  In reaching this

conclusion, the ALJ considered both objective and subjective evidence in assessing the

credibility of Plaintiff's pain complaints and did not improperly reject them because of a lack of

objective proof.  As discussed *supra*, the ALJ properly considered Plaintiff's activities of daily

living, such as the evidence that she continued to engage in heavy labor, and determined that

they were inconsistent with her alleged limitations caused by pain.  R. 26-29, 243, 267, 292, 318,

463.  The ALJ also relied on medical evidence that Plaintiff's back pain was reduced through

treatment and that some of her physical examinations produced normal results.  R. 28-29, 267,

270, 362-63, 657.  Therefore, the ALJ properly assessed Plaintiff's complaints of pain.

## V.     Plaintiff's Argument That The Grids Compel A Finding Of Disability As Of Six Months Prior To Her Fiftieth Birthday Must Be Addressed On Remand.

Plaintiff makes a three-step argument to suggest that she should be found disabled under

the Medical-Vocational Guidelines found at 20 C.F.R. Subpart P, Appendix 2 (known as "the

Grids").  First, she argues that the ALJ erred in assigning her the RFC to perform light work and

should have limited her to sedentary work.  Pl.'s Br. 4.  Second, had Plaintiff been limited to

sedentary work the Grids would have compelled a finding that she was disabled after her fiftieth

birthday.  *Id*; *see also* 20 C.F.R. Subpart P, Appendix 2 § 201.14.  Finally, since it is improper to

apply the Grids in a mechanical fashion, Plaintiff should have been awarded benefits up to six

months prior to her fiftieth birthday.  Pl.'s Br. 4.  However, Plaintiff must succeed on the first

part of the argument for the Court to address the other two.  If there is substantial evidence for

the ALJ's decision that Plaintiff was able to perform light work, it need not reach the arguments

about proper application of the Grids when a claimant is close to a category-changing birthday.

Here, the Court has found that the ALJ insufficiently explained the decision to give very little weight to the decision of Plaintiff's treating physician, Dr. Krempel-Portier, and significant weight to the opinions of the state agency consultants. *See supra.* Therefore, the determination of whether Plaintiff can perform light work or only sedentary work will depend on the proper weighing of the medical evidence on remand. However, should the ALJ find on remand that Plaintiff is limited to sedentary work, he or she may not apply the age categories mechanically and must account for Plaintiff's proximity to the "closely approaching advanced age" category. *See France v. Apfel*, 87 F. Supp. 2d 484, 491-92 (D. Md. 2000); *Washington v. Apfel*, 40 F. Supp. 2d 326, 330-31 (D. Md. 1999). This is not to say that Plaintiff would necessarily be found disabled in advance of her fiftieth birthday if she were limited to sedentary work, but only that an individualized assessment must be conducted to determine which age category should apply.

## VI.  The Hypothetical Question That The ALJ Posed To The Vocational Expert Was Proper.

Plaintiff argues that the hypothetical question the ALJ posed to the vocational expert was flawed because it did not include all of her limitations. Pl.'s Br. 10. The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2011). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364

(4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).

When formulating the hypothetical question, the ALJ identifies the "physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003). The hypothetical question need not reference each of the claimant's impairments or diagnoses by name so long as it adequately reflects the limitations caused by those impairments. *Brown v. Astrue*, No. 10-1238, 2013 WL 937549, at *6 (D. Md. Mar. 8, 2013); *see also Chambers v. Astrue*, No. 08-806, 2012 WL 4511051, at *2 (M.D.N.C. Sept. 28, 2012) ("The hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir.2006)); *Harris v. Barnhart*, No. 05-65, 2006 WL 1442792, at *11 (W.D. Va. May 25, 2006) (stating that the hypothetical question "need not use specific diagnostic terms") (internal quotations omitted); *Osgar v. Barnhart*, No. 02-2552-18B, 2004 WL 3751471, at *4 (D.S.C. Mar. 29, 2004) (same), *aff'd*, 117 F. App'x 896 (4th Cir. 2005). It is the ALJ's role to translate the claimant's medical impairments into functional limitations from which the vocational expert can determine whether work is available. *See Smith v. Sullivan*, 733 F. Supp. 450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's various physical impairments is not going to be nearly as useful to the vocational expert as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments.").

Plaintiff does not specify which impairments or limitations the ALJ allegedly failed to include in the hypothetical question, or which evidence the question failed to properly account

for. The Court will not remand merely because the hypothetical question did not specifically list each of Plaintiff's impairments and limitations. The ALJ appropriately provided a detailed hypothetical question based on her assessment of Plaintiff's RFC. Therefore, Plaintiff's underlying argument is not that the hypothetical was flawed, but that the ALJ lacked substantial evidence for the conclusion that she retained the RFC to perform light work. *See Wells v. Chater*, No. 94–2186, 1995 WL 417685, at *3 (4th Cir. July 7, 1995). As addressed above, this issue will be determined after a proper weighing of the medical evidence on remand. Only if the ALJ reaches a different conclusion as to Plaintiff's RFC will the hypothetical question require modification.

## CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Commissioner's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion. As Plaintiff only argued on appeal that she was disabled as of January 1, 2010, on remand the Commissioner should evaluate Plaintiff's claims from that date through July 25, 2011, the date of the ALJ's decision below.


May 15, 2013                                                    /s/

                                                   Charles B. Day
                                                   United States Magistrate Judge

CBD/ISA